Thank you, counsel, for joining us this afternoon by videoconference for this argument session. The court has three cases set for argument today and has set forth on the calendar. Madam Clerk, would you please call the first case for argument? 49-2868 from the Eastern District of Missouri, Scott Rivera v. Bank of America. All right. We'll proceed with argument in case number one. I'd ask that any lawyer who's not arguing, please place your microphone on mute until you are speaking. And we'll hear first from Mr. Warnick. Good afternoon. Thank you. And may it please the court, I'm Richard Warnick. I'm here for appellant Scott Rivera. We first request to reserve six minutes of time for rebuttal. You may reserve what you wish, but you'll have to watch the clock and stop on your own because it will expire if you continue after six minutes. Yes, Your Honor. Thank you. We're here essentially because this case is essentially a moot case. This case began with Scott Rivera applying for a temporary restraining order on August 31st, 2018. That day was the day before a three-day weekend. He did so as a pro se litigant in the late afternoon. And he was granted a TRO in the Missouri State Court by a duty judge that stopped the foreclosure of his property on Tuesday, September 4th. He didn't ask for any other relief. He didn't have any other claims. He asked for nothing but a stopping of the sale and perhaps a hearing. This, however, engendered a litigation maelstrom. The bank, understandably, was not happy. On September 5th, they filed a motion to dissolve the TRO, claiming that it was, among other things, done in bad faith and was void on its face. At their own initiative, the bank orchestrated, with the consent of Mr. Rivera, a hearing on September 11th, the following week, at 1.30 in the afternoon. Unfortunately, the bank counsel didn't appear. The bank did not appear. Instead, they removed it to federal court. At that point in time, there were simply two or three days left in that restraining order. Mr. Rivera had not been heard in state court. And the federal district court, upon removal, did not hear either motion from either party. Mind you, the motion that Bank of America initially filed was simply a motion. This case came to the federal court system via two motions. There is no petitions here. Upon removal, which was fulfilled on the next day, on September 12th, there was no litigation conduct. There was nothing done by either party until January 15th, when the bank filed a motion to dismiss under 12B-6. As far as Mr. Rivera is concerned, this case was over upon the expiration of a TRO. A TRO is the most limited, smallest shred of relief that could be asked for. He never asked for anything else. He didn't even have an opportunity at a hearing to ask for a more permanent injunctive relief, such as a preliminary injunction. Nothing happened between September 12th and January 15th. Unfortunately, we have to talk about these facts because these facts are what make this case moot. It's moot because it's expired. The original TRO order expired in September of 2018, and therefore the bank's motion to dissolve also becomes moot. There's nothing else to talk about. It was not heard in any court, and for all practical purposes, this case was over, we believe. But from the bank's standpoint, this case continued on. And that's because with the removal statute, it allows large entities, large businesses to remove things to the federal court system. Ostensibly, the public policy is to level the playing field. But the bank had set a hearing before a state court judge, Judge Dia Sherry. They blocked out the time, and then they didn't appear for it. And so they did nothing for four and a half months, and then they did a 12B6 motion, and they wanted to claim that what was originally filed was a petition. So naturally, Mr. Rivera filed to bring some claims in late January, early February of 2019, and that was because they are in a preclusive tar pit. That's essentially what happens to a state court litigant. Because if the original motions had been heard on September 11th in state court, Mr. Rivera's TRO may have been dismissed, but there wouldn't have been any other legal ramifications. Bank of America wanted more, and they wanted to preclude any future claims from Mr. Rivera. This case is about trying to get more than what they originally were threatened with, with a TRO. All this state court TRO did was stop one foreclosure sale, and was for the briefest of time of two weeks. That's it. And the federal court, they didn't... Mr. Warner? Yes, sir. I have another question for you. Am I correct that in federal court, Mr. Rivera obtained leave to file a first amended complaint? Yes, he did. Okay, now how does that fit in with your argument of mootness? Because at least by that point, you have an operable complaint, do you not? Well, there was never a first operable complaint. The bank started calling his application for a TRO a petition which would make it a complaint in the federal system. When it's filed, when his motion for a TRO is filed within the Missouri case net state court system, it's turned within the software petition. But the substance of what was originally filed is that there was simply a motion for a very limited injunctive relief of two weeks. The real first complaint was that first, what was called a first amended complaint. That was not well done. But the substance, the substance... But didn't Mr. Rivera call it a first amended complaint? Well, it was entitled a first amended complaint. They were calling it a petition and that was inartfully done. Yes, it was called a first amended complaint, but it was not a real first amended complaint. It was not an amended complaint from the standpoint that it was the second complaint bringing claims. It was the first complaint bringing any claims for money damages. Nothing else had previously been filed in the previous five months asking for any kind of relief other than a stop of a single foreclosure sale. Well, can a litigant initiate an action in Missouri court without filing a petition? Not really, because now with e-filing, it is termed a petition. It's termed a civil action. And this is what's in the Pelley brief. Right. Well, what's wrong? Is that correct? The fact that not just in terms of software, but in terms of the rules of procedure in Missouri is an action initiated by the filing of a petition. Yes, it is initiated by the filing of a petition, but what Mr. Rivera filed pro se in a handwritten motion, he called it a motion for temporary restraining order. That was simply in substance, in substance, a motion for limited relief. And I see my time is about 530. If the court doesn't have any immediate questions, I'll reserve the remaining time for rebuttal. You may. Thank you. Why don't you put your microphone on mute there, Mr. Warnick, and we'll hear from Mr. Winter. Thank you. Thank you, Your Honors. Douglas Winter for Bank of America. Hope you can hear me. I can see you well. I want to make one thing very clear at the start. On August 31st, Mr. Rivera filed his motion for a temporary restraining order. Mr. Warnick entered his appearance for Mr. Rivera five days later on September 4th. All the other pleadings in this case were filed by Mr. Warnick. They are not pro se pleadings. So, for example, the first amended complaint was not filed by Mr. Rivera, but by his attorney. It's been represented throughout. This was and is a civil action under Missouri procedure as well as under federal procedure. And the St. Louis County Court properly gave Mr. Rivera a leeway as a pro se litigant filing something entitled a motion for temporary restraining order. And that should not be taken advantage of now because the court acted in his favor then. And the court accepted this as a petition under Missouri law, obviously, because one cannot file a motion for temporary restraining order either in Missouri court or in federal court without filing a petition or complaint. It was removed and considered a complaint. There was no opposition to its removal as a complaint at that time. In fact, even after the TRO was dissolved and a motion to dismiss was filed and the district court gave Mr. Rivera an opportunity to respond to that. Instead, Mr. Warnick elected to file a first amended complaint, which in its name alone, an amended complaint obviously suggests that the initial item was indeed a complaint. There's no other other other thing to call it. Now, in terms of this mootness argument, a temporary restraining order has no remedial effect. It's merely intended to preserve the status quo until the court can resolve the merits. And if we even look at the pro se motion, that motion contemplated more than a temporary restraining order. Let me quote from it. The closing prayer for relief at Appendix 58 says requested the foreclosure sale, quote, be canceled and any future sale be delayed until after the hearing set on September 12th, 2018. And the motion itself states, again, this is Mr. Rivera's own writing at 855 that quote plaintiff strongly believes that he would succeed on the merits. You look at the opening brief for Mr. Rivera in this very field, it confirms that he was seeking more than a temporary restraining order. On page six, the brief says, quote, if anything, as a pro se litigant, what Rivera really sought was a hearing to obtain some type of permanent injunctive relief concerning what he believed his grievances were against Bank of America. Now, a case only becomes moot when it is impossible for the court to grant any effectual relief to the prevailing party. Here, nothing prevented Mr. Rivera after the dissolution of the TRO from seeking another temporary restraining order. Nothing prevented him from seeking a permanent injunction. The district court made no findings that would have prevented him from doing that. The district court merely found the TRO had elapsed under federal procedure. So factually, nothing changed. And the amended complaint obviously contradicts the notion that the case is moot because then he sought additional relief. In addition to injunctive relief, he sought damages. Mr. Rivera says, I just want to mention as an aside, it's more of an interesting note than otherwise. Mr. Rivera suggests that you cannot waive an argument of mootness. That's true about Article 3 mootness. But as I think we've shown here clearly, there's a continued to be a case in controversy here. There was no Article 3 mootness. So at best, at its very best, there could be an argument for prudential mootness, equitable mootness. And that, of course, goes to the discretion of the court. And that can be waived. And any of any such request or any such belief that there should have been some sort of prudential mootness here as a result of the TRO has been waived. In any event, I think our argument shows that through Rivera's own words and his conduct and continuing to litigate this action, including the First Amendment complaint, whether we call this judicial estoppel or waiver. This argument is non-existent. In any event, it fails. Unless the court has any questions, there's there is one other element I do want to mention just to correct the record, because our answering brief mistakenly stated that the bank filed a motion to dissolve the temporary restraining order on September 12th, the day after removal. In reality, the St. Louis Circuit Court transferred the bank's motion to dismiss to the federal court on that day because it was still pending. So in any event, so and of course, the district court in the district court, we were not required to reclaim that the court did not request that the court actually did not act on it, which then resulted later on in filing another motion to dissolve the complaint that resulted in the district court dissolving the claim under the 14 day rule. So in reality, contrary to what we mistakenly stated in our answering brief, the motion was transferred to the district court on September 12th, not refiled by Bank of America. Unless the court has any further questions or any questions, I'll rest. Do you think that judicial estoppel and waiver are necessary to analyze this case? I thought your position was the okay, you're saying no. I thought you were saying that regardless of what Rivera's position had been as a legal and factual matter, he filed a petition because that's the only way you can initiate an action. That's correct. It was a petition that became a complaint in the federal courts. And when the TRO was dissolved, the case was not rendered new. There still was a case in controversy. He made that clear in his original petition. It was made clear in the first amended complaint. He could have sought a TRO that very day after the TRO was dissolved. And obviously he sought permanent injunctive relief. These are collateral arguments, in other words. All right. You mean judicial estoppel and waiver, you're now calling collateral arguments? No, they are collateral arguments. I mean, our brief simply set forth a series of arguments as to each of these points. The fundamental point is that the case was not moved. All right. So I guess you're saying if we disagree with you about that, then you want to argue waiver or judicial estoppel? Yes. I see. All right. Thank you for your argument. These arguments were not raised before the district court, or they are directly contrary to the actions the litigants took in the district court. Hence those collateral arguments. All right. Anything further, Mr. Winter? No, thank you, Your Honors. Very well. Mr. Warnick, we'll hear from you in rebuttal. Thank you. I want to reiterate that our argument is essentially that the federal court should be limited to what is in front of it. Essentially what they're arguing is simply by being removed that it's a Pandora's box leading to a preclusion. But even if it's called a petition, in substance, there was not a single claim for damages. He only asked for one type of relief. It was a very limited relief. And when it expires, the case is over, especially in state court. Would the state court judge have unlimited jurisdiction over a perpetuity at that point? There is nothing. It is simply a status quo type of request. Nothing more was asked. I don't think it can be inferred from the record that he made a mistake by not asking for more. As far as the litigation conduct in the waiver, there was no litigation. The only litigation actions taken by Mr. Rivera after the initial TRO filing was in response to the 12-B-6 in January of 2019. The case had gone over nearly four months with nothing happening. In fact, if they believed it was a petition, they should have filed an answer within a number of days after removal. They didn't treat it as a petition. Until January of 2019, four months later, they treated it as a motion done in bad faith. That's what they argued on September 5th, and that's what was sitting in front of Judge White in the federal district court. It's only when they wanted to get a claims preclusion type result did they change and hammer in that that was the first petition. Essentially, the result that Bank of America wanted was they wanted to close out any future legal cases with Mr. Rivera. But there's no indication from either of the records filed that that was in the offing. Mr. Rivera was very conservative in his legal actions here. He just wanted to stay in his house. There's nothing in the record to indicate that Mr. Rivera was going to bring any claims that was all triggered by a motion to dismiss. And in federal court, a motion to dismiss often is dismissal with prejudice. Now, perhaps that First Amendment complaint, essentially, a not well done entitled complaint, but that was the first time any claims for money damages were done. The logical result of allowing an unlimited, it would create an unlimited jurisdiction over perpetuity. If a single parole, and they're asked for all the time, that if a jurisdiction remains open, no case can be closed. It's analogous to what happens in state court domestic instances. A couple has a spat, one asks for a domestic restraining order. It's granted for a number of weeks until there's a hearing. But if the complaining party doesn't show up at the hearing, it's dismissed. It doesn't go any further. Mr. Warnick question. What did you mean? What did you mean on page six of your brief in this court where you said what Rivera sought was a hearing to obtain some type of permanent injunctive relief? Well, that would have been a possibility, but we don't know. That would have been a possibility to ask for. Essentially, Mr. Rivera is a United States citizen seeking relief from his local state court. And that's it. The fact that he didn't ask for damages originally doesn't mean there wasn't a case or controversy if he was seeking some type of permanent injunctive relief. And I don't think he had the opportunity to do that. The bank set a hearing on it and they didn't attend their own hearing. It's on page 65 of the appellee's appendix that the defendant failed to appear for their own hearing. My time is running short, and we would ask that the court find that this case is moot. And barring that, find that the real first complaint was the one filed in January of 2019 and that it be allowed to further amend that complaint. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file an opinion in due course.